IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

RAYMOND LEROY ROSA,            Case No. 1:15-cv-01180-AA
                                                   OPINION AND ORDER
               Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.
_____

Arthur W. Stevens III
Black, Chapman, Webber & Stevens
221 Stewart Ave, Suite 209
Medford, OR 97501
        Attorney for plaintiff

Janice E. Hebert
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Page 1 - OPINION AND ORDER

Heather L. Griffin
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

AIKEN, Judge:

Plaintiff Raymond Leroy Rosa brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is reversed and this case is remanded for further proceedings.

## BACKGROUND

Plaintiff was born June 29, 1970 and was 33 years old at the time the alleged disability began. Tr. 92. He completed high school and received an associates degree in computer science and general studies. Tr. 54-55. Plaintiff enlisted in the Navy in 1989 and was honorably discharged in 1992. Tr. 345. From 2000 to 2003, plaintiff worked as a parts salesperson. Tr. 56. He alleges disability due to mixed adjustment anxiety; chronic fatigue syndrome; lower lumbar strain; fibromyalgia; nosebleeds; depression; gastroesophageal reflux disease; high blood pressure; memory loss; vision loss; joint swelling and throbbing; and irritable bowel syndrome ("IBS"). Tr. 183, 189. Plaintiff alleges his symptoms began during deployment to the Persian Gulf and increased in severity over time. *See, e.g.*, Tr. 189, 591-92, 594. Plaintiff receives disability benefits from the U.S. Department of Veteran Affairs ("VA"). Tr. 348-49. Plaintiff had a VA disability rating of 100 percent on his alleged

disability onset date of January 1, 2004. Tr. 164. As of February 2013, the VA rated plaintiff permanently and totally disabled.[1] Tr. 348.

On February 8, 2013, plaintiff filed an application for disability insurance benefits, alleging a disability onset date of January 1, 2001. Tr. 163, 166-72. Plaintiff subsequently amended his disability onset date to January 1, 2004. Tr. 163. Plaintiff's date last insured was September 30, 2004. Tr. 179. Plaintiff's claim was denied initially and upon reconsideration. *See* Tr. 110-13; 116-18. Plaintiff was represented by counsel and testified at a hearing on September 12, 2014. Tr. 47. The ALJ found plaintiff was not disabled, because although plaintiff could not perform past relevant work, he was capable of other work that existed in the national economy. Tr. 34-36. The Appeals Council denied plaintiff's request for review, rendering the ALJ's findings final. Tr. 1. Plaintiff subsequently filed this appeal.

## STANDARD

A district court must affirm the ALJ's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must "consider the record as a whole" and weigh "both the evidence that supports and detracts from the [ALJ's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable

---

[1] Plaintiff had a 90 percent disability rating in June 2002, Tr. 503, and February 2013, Tr. 349. Even at a 90 percent rating, plaintiff receives 100 percent disability benefits because he was determined incapable of employment.

Page 3 - OPINION AND ORDER

interpretations of the evidence are insignificant if the ALJ's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## ADMINISTRATIVE LAW JUDGE FINDINGS

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

"The [ALJ] has established a five-step sequential evaluation process for determining whether a person is disabled." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step one, the ALJ found plaintiff did not engage in substantial gainful activity during the alleged disability period. Tr. 26. At step two, the ALJ found plaintiff had the following severe impairments: adjustment disorder with depressed mood; personality disorder, NOS; fibromyalgia syndrome; carpal tunnel syndrome; and lumbar strain. *Id.* At step three, the ALJ found plaintiff's impairments, singly or in combination, did not equal the severity of a listed impairment. Tr. 27. At step four, the ALJ found plaintiff could not perform past relevant work. Tr. 28. At step five, the ALJ found plaintiff has the residual functional capacity to perform light work subject to the following conditions:

> [Plaintiff] is limited to standing and walking for 6 hours in an 8 hour workday, for one hour at a time. [Plaintiff] is limited to sitting for 6 hours in an 8 hour workday, for one hour at a time. [Plaintiff] is also limited to occasional climbing of ramps and stairs, ladders, ropes, and scaffolding, stooping, kneeling, crouching, and crawling. Due to intermittent carpal tunnel syndrome, the [plaintiff] is limited to frequent handing and fingering. Due to mental impairments, the [plaintiff] is further limited to less than occasional contact with the public, and structured, superficial contact with coworkers.

Tr. 29. The ALJ further found plaintiff was able to perform jobs existing in significant numbers in the national economy, specifically mail clerk, information router, and order filler. Tr. 35.

## DISCUSSION

Plaintiff asserts the ALJ erred by (1) improperly evaluating plaintiff's subjective symptom testimony; (2) improperly rejecting the opinions of the plaintiff's treating physician and other medical providers; (3) failing to give proper weight to the VA disability rating; (4) improperly rejecting lay witness testimony; (5) failing to consider the combined effect of plaintiff's impairments in determining whether they equated in severity to a listed impairment; and (6) improperly evaluating testimony of the vocational expert ("VE").

I. *Plaintiff's Symptom Testimony*

Plaintiff first argues the ALJ failed to state clear and convincing reasons to discredit his testimony regarding the severity of his medical impairments. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v.*

Page 5 - OPINION AND ORDER

*Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Specifically, when a claimant's work history undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Plaintiff stated to the Social Security Administration ("SSA") he was unable to work on a regular basis due to his conditions. Plaintiff reported anxiety, stress and acid reflux affect his ability to sleep at night, despite compliance with medication. Tr. 190. Plaintiff also reported experiencing constant pain from the combination of his impairments, with particularly severe pain during bowel movements. Tr. 69, 189. At the hearing, plaintiff testified he sometimes would spend two hours in the bathroom and suffered from rectal bleeding. Tr. 69-70. Plaintiff testified he was let go from his job in 2004 because he spent too much time in the bathroom and had excessive absences due to the combination of his impairments. Tr. 57. Plaintiff stated his impairments effected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, converse, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. Tr. 194.

The ALJ gave little weight to plaintiff's statements regarding the intensity, severity and limiting effect of his impairments. The ALJ found plaintiff's statements were inconsistent with (1) statements to his medical provider; (2) objective medical findings; and (3) his work history. While the ALJ's characterization of plaintiff's statements to his provider and SSA give an appearance of a conflict, returning to the record, it is clear the supposed conflict rests on mischaracterizations and cherry-picked evidence.

A. *Statements to Medical Providers*

The ALJ identified three "candid statements" to medical providers that were allegedly inconsistent with statements to SSA: (1) plaintiff's April 4, 2002 pain statement; (2) plaintiff's July 2004 report of improved functioning on Lansoprazole; and (3) plaintiff's report in July 2004 of improved IBS symptoms. Tr. 31.

i. *April 4 Statements to Medical Providers*

The ALJ found plaintiff's symptom testimony to SSA conflicted with his April 4, 2002 report to his medical provider "that he only experienced severe pain, or 10/10 pain 'once in awhile' and that he used Tylenol rarely, and 'Ibuprofen only a few times a week.'" *Id.* During the same visit, plaintiff reported he was continuing to have "significant" anal pain and swelling, with 10/10 pain "occasionally." Tr. 505. Plaintiff stated he used Tylenol 3 with codeine "rarely," taking it once in the past week; took ibuprofen a few times a week; and used lidocaine jelly and hydrocortisone enemas for pain associated with IBS. *Id.*

The ALJ found the April 4 statements conflicted with plaintiff's report on a SSA questionnaire that he experienced constant pain from the combination of his impairments. Tr. 29, 189. That statement does not conflict with the April 4 statements. The April 4 statements were limited to pain associated with IBS and not generalized statements about all of his impairments (*i.e.* IBS, back pain, fibromyalgia, nosebleeds, carpal tunnel, acid reflux, etc.). *See* Tr. 505. Furthermore, the ALJ ignored statements plaintiff made to his provider corroborating his generalized pain testimony, including statements made one day earlier on April 3. *E.g.* Tr. 506 (plaintiff reports chronic pain is interfering with his relationship with his wife and admits experiencing "passive suicidal ideations due to the pain"); Tr. 503 (plaintiff experiencing chronic back pain and reports he

Page 7 - OPINION AND ORDER

is limited to walking for twenty minutes). The ALJ erred by taking a statement about pain associated with one specific condition out of context and concluding it conflicted with plaintiff's general pain testimony to his provider. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (disapproving ALJ's "cherry-pick[ing]" medical provider's characterizations of plaintiff's "rapport and demeanor instead of considering these factors" in the broader context of the provider's diagnoses and observations of impairment).

Next, the ALJ found plaintiff's April 4 statements were inconsistent with hearing testimony "that he experienced severe and disabling pain in addition to rectal bleeding, when using the bathroom for bowel movements." Tr. 30, 69-70. Plaintiff's testimony regarding experiencing "disabling" pain and "rectal bleeding" was confined to his experience with severe IBS episodes while working at as an auto parts salesman. *See* Tr. 69-70. Plaintiff never testified *every* bowel movement caused that level of pain and it would be irrational to construe plaintiff's statements in that way. Furthermore, the ALJ failed to mention or simply ignored medical reports corroborating plaintiff's hearing testimony regarding the severity of his IBS symptoms. *E.g.* Tr. 519-22 (plaintiff experiencing severe pain and bleeding due to rectal abscess). The ALJ erred in relying on mischaracterizations of plaintiff's statements to conclude there was a conflict in the record.

Lastly, the ALJ determined plaintiff's April 4 statements conflicted with his report "disabling pain affected his ability to sleep unimpaired." Tr. 30, 190. Plaintiff actually wrote on his SSA questionnaire, "constant tossing and turning because my body aches and gets stiff[,] rolling all night, insomnia from anxiety and stress and constant acid reflux even with medicine . . . " Tr. 190. It is not reasonable to interpret this statement as saying pain from IBS alone caused plaintiff's insomnia. Furthermore, the record supports plaintiff's statements. *See* Tr. 491, 495, 500 (plaintiff reports

Page 8 - OPINION AND ORDER

difficulty sleeping due to acid reflux). The ALJ's failed to provide substantial evidence to support a conflict between the April 4 statements to providers and statements to SSA.

### ii. *July 2004 Report of Improved Functioning on Lansoprazole*

The ALJ found plaintiff's functional impairments were inconsistent with "reported improvement in symptoms when he changed his eating habits, and used Lansoprazole instead of Omeprazole." Tr. 31. However, the ALJ failed to take into account earlier medical reports showing plaintiff continued to suffer from reflux during the day and severe reflux at night, despite taking Lansoprazole. *See, e.g.*, Tr. 491, 494. In addition, the ALJ failed to explain how some improvement in reflux symptoms conflicted with plaintiff's testimony about the cumulative effect of his impairments. Plaintiff's statement, in light of other medical records, does not conflict with plaintiff's alleged functional impairments.

### iii. *July 2004 Report of Improved IBS Symptoms*

Finally, the ALJ found a conflict between plaintiff's statement to his provider in July 2004 that his IBS symptoms were improving and a letter dated September 15, 2014 to SSA describing the severity of his IBS symptoms between 2002 and 2004. In the letter, plaintiff reported between 2002 and 2004 he would need to be in the bathroom "no less than 30 minutes at a time" and "45 minutes to a hour on average" due to lower colon inflammation and bleeding. Tr. 30 -31, 238. The ALJ found plaintiff's statement was inconsistent with plaintiff's July 14, 2004 statement to his nurse practitioner he was suffering from "occasional inflammation with proctitis." Tr. 488. During the same visit plaintiff reported he was taking iburprofen once a day for swelling and was administering hydrocortisone cream once a week. *Id.*

The purpose of plaintiff's letter to the ALJ was to clarify hearing testimony regarding severe

Page 9 - OPINION AND ORDER

IBS episodes he experienced between "2002 and 2004" while working at "Lithia and at the auto recyclers." *See* Tr. 238-39. The record shows plaintiff was employed at Lithia Motors from 2000 to 2002 and employed at Peach Street Enterprises from 2003 to 2004. Tr. 175-176. The plaintiff only earned nine hundred dollars during 2004. Tr. 176. At plaintiff's hearing he testified in 2004 he was "let go" because "[he] spent most of [his] time in the bathroom just like [he] did when [he] worked at Lithia, unfortunately." Tr. 57. The ALJ unreasonably concluded improvement of symptoms in July 2004 conflicted with plaintiff's statements regarding severe episodes of IBS between 2002 and early 2004. After review of the record, none of the three conflicts the ALJ perceived constitute a clear and convincing reasons to support an adverse credibility finding.

    *B. Objective Medical Findings*

The ALJ also found plaintiff's symptom testimony inconsistent with "unremarkable" objective medical findings. Tr. 31. However, the ALJ failed to identify specific medical findings in the record that were inconsistent with plaintiff's alleged limitations. Thus, this is not a clear and convincing reason to discredit plaintiff's symptom testimony.

    *C. Work History*

Finally, the ALJ found plaintiff's symptom testimony inconsistent with his work history. Plaintiff first alleged a disability onset date of January 1, 2001. Tr. 163, 166-72. Plaintiff only amended his disability onset date after learning SSA regulations precluded a finding of disability from 2001 to 2003 due to his substantial gainful activity. Tr. 163. The ALJ concluded plaintiff's work history between 2001 and 2003 undermined plaintiff's statements about the severity of his functional limitations. The ALJ's reasoning is not convincing. First, plaintiff has amended his onset date and does not allege disability while he was working. Second, plaintiff explained he was under

Page 10 - OPINION AND ORDER

pressure financially to continue working from 2001 to 2004 despite immense difficulty and that his impairments eventually led to him losing his job. *See, e.g.,* Tr. 72, 525, 592, 598. The plaintiff should not be punished because he attempted and failed to maintain a job. To the contrary, a plaintiff's unsuccessful attempts to work may actually favor a finding of disability. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). The fact that plaintiff worked from 2001 to 2004 does not constitute a clear and convincing reason to discredit plaintiff's symptom testimony. *Id.*

II. *Opinions of Treating and Examining Physicians*

Plaintiff next alleges the ALJ erred by discrediting the medical opinions of Dr. Robert C. Gerber, Dr. Richard Swanson, Dr. John A. Melson, Dr. William E. Matthews, Dr. Robert E. Ransmeier, Dr. Andrew Mebane, Nurse Practitioner Cynthia Miller, and Nurse Practitioner Carolyn Wecks Bartlett without providing sufficient reasons for doing so.

An ALJ must consider all medical opinions in the record. 20 C.F.R. § 404.1527(b). When a treating or examining physician's opinion is uncontroverted, an ALJ may only reject the opinion for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ is not required to accept a physician's opinion that is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

A. *Dr. Robert C. Gerber's opinion plaintiff could not work*

Dr. Gerber was plaintiff's examining physician on October 4, 2004. Dr. Gerber reviewed Plaintiff's military and VA medical records. Tr. 591. Dr. Gerber found plaintiff's medical records supported a diagnosis of IBS. *Id.* Dr. Gerber also diagnosed plaintiff with fibromyalgia. Tr. 594. Dr.

Page 11 - OPINION AND ORDER

Gerber opined plaintiff is "not capable of gainful employment given combination of symptoms reported above. Indeed, I would not want him to be an employee of mine." Tr. 594.

The ALJ reasonably found Dr. Gerber's opinion plaintiff could not work to be conclusory, which constitutes a clear and convincing reason to assign Dr. Gerber's opinion little weight. Furthermore, the ALJ owes no deference to Dr. Gerber's opinion regarding disability. Disability determinations are reserved solely for the ALJ. 20 C.F.R.§ 404.157(d)(1); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010). Thus, substantial evidence supports the ALJ's decision not to credit Dr. Gerber's opinion plaintiff could not work.

B. *Other medical evidence*

The ALJ failed to mention numerous treatment notes by Dr. Gerber, Dr. Swanson, Dr. Melson, Dr. Matthews, Dr. Ransmeier, Dr. Mebane, Nurse Practitioner Miller, and Nurse Practitioner Bartlett. There is no way for the court to know whether the ALJ properly weighed these medical providers treatment notes or simply chose to ignore them. If taken as true, many of the reports from plaintiff's medical providers would conflict with the ALJ's RFC determination. *See, e.g.*, Tr. 595-96 (Dr. Swanson opines plaintiff's frequent nosebleeds which last a few minutes to three hours are likely due to an exposed and thinly covered artery); Tr. 595 (Dr. Swanson notes plaintiff is suffering from frontal headaches of moderate intensity occurring one to two times a week for four to eight hours); Tr. 596 (Dr. Melson notes plaintiff's headaches occur three time a week, prostrating two times a month, lasting for a few hours to all day); Tr. 598 (Dr. Melson diagnoses plaintiff with probable frequent migraine headaches); Tr. 599-600 (Dr. Mathews diagnoses plaintiff with chronic muscular strain and mild chronic synovitis and opined orthopedic difficulties are likely worsened by stress and depression). On remand, the ALJ must consider *all* medical opinions. This

includes consideration of Dr. Gerber's clinical observations and assessments. *E.g.* Tr. 592 (Dr. Gerber observing plaintiff was unable to sit through his two hour medical exam due to knee pain, back pain, and stiffness). If the ALJ assigns an opinion less weight, he must provide specific reasons for doing so.

III. *Lay Witness Testimony*

Plaintiff also argues the ALJ improperly discredited statements by his girlfriend, Angela Nottingham, in determining plaintiff's credibility and plaintiff's functioning between March 2012 and March 2013. On March 25, 2013, Nottingham reported she has known plaintiff for one year and currently lived with him. Tr. 203. Nottingham reported plaintiff's back and body pains prevent him from engaging in many activities; acid reflux keeps him awake at night; his anxiety makes it difficult to be around people; he needs assistance with basic tasks such as dressing, cooking, bathing, and grooming; and his conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. *See* Tr. 203, 204, 208.

Generally, lay witness testimony describing a plaintiff's symptoms is "competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Id.* (citing *Dodrill*, 12 F.3d at 919). Here, the ALJ provided a germane reason to discredit the lay witness. The ALJ did not give Nottingham's testimony weight because she did not know plaintiff during the relevant period. An ALJ may discredit the testimony of a lay witness if that witness did not have sufficient contact with the plaintiff during the relevant time frame. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996). Nottingham did not have any contact with plaintiff for the

Page 13 - OPINION AND ORDER

eight years between the alleged onset date of January 1, 2004 and March 2012. Thus, the ALJ provided a sufficient reason to discredit Nottingham's testimony. It is not necessary to address other reasons the ALJ gave to discredit the lay witnesses testimony. The temporal separation between plaintiff's date last insured and Nottingham's observation is, standing alone, a sufficient reason to discredit her testimony.

IV. *Department of Veteran Affairs*

Plaintiff asserts the ALJ should have given great weight to plaintiff's VA disability rating of 100 percent. The ALJ "must ordinarily give great weight to a VA determination of disability," because the agencies share a similar purpose, process, and criteria in evaluating claims. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, since the agencies' evaluation criteria are not identical, the ALJ may give a VA disability rating less weight if he provides "persuasive, specific, valid reasons for doing so that are supported by the record." *Id*. For example, the ALJ may assign little weight to a VA determination if the ALJ has new evidence that was unavailable to the VA. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009).

The ALJ failed to provide a sufficient reason to assign plaintiff's VA disability rating less weight. The only reason the ALJ gave for discrediting the VA disability rating is that plaintiff had a ninety percent VA disability rating from 2001 to 2003, when he was still working. Social Security regulations preclude an award of disability benefits during any period of substantial gainful activity. *See* 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled *regardless of your medical condition* or your age, education, and work experience." (emphasis added)). Medical records demonstrate the healthcare providers plaintiff saw through the VA were aware he was working, yet still found him disabled.

Page 14 - OPINION AND ORDER

*See, e.g.,* Tr. 503. This suggests the rules governing *work activity* are different from the VA and the SSA. However, the ALJ did not explain how the VA and Social Security disability criteria for *medical conditions* differed such that the VA's disability finding was not entitled to great weight. The ALJ also did not cite any evidence that was unavailable to the VA. On remand, the ALJ must give great weight to the VA's disability finding or provide a persuasive, specific, and valid reason for giving the rating less weight.

V. *Combined Effects*

Plaintiff contends the ALJ erred by not properly evaluating the combined effect of plaintiff's impairments in determining whether they net or equaled a listed impairment. At step three, plaintiff bears the burden of proving the combined effect of his impairments are equivalent to a listed impairment. *Burch*, 400 F.3d at 683. The ALJ is not required to discuss how the combined effects of the plaintiff's impairments compare to a listed impairment unless the plaintiff presented evidence in an effort to establish equivalence. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Plaintiff did not specify a listed impairment that is allegedly equal in duration and severity to the combination of his impairments before the ALJ or in his brief to the court. Therefore, the ALJ permissibly concluded at step three the combined effect of plaintiff's impairment were not equivalent to a listed impairment.

VI. *Instructions on Remand*

Having found the ALJ erred in discrediting plaintiff's testimony and by not properly weighing the medical evidence, and giving little weight to the VA's disability rating, I must determine whether plaintiff's claim will be remanded for further proceeding or an immediate payment of benefits. When the ALJ errs in denying a plaintiff's disability claim, the typical remedy is a remand for further proceedings. *Garrison*, 759 F.3d at 1020. Further proceeding are appropriate

Page 15 - OPINION AND ORDER

when the record has not been fully developed; ambiguities and conflicts remain that need to be resolved; or additional evidence would be useful "in light of the passage of time." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). In evaluating what sort of remand is appropriate in a given case, the district court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have bene resolved." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (quotation marks and citation omitted).

In this case, further proceeding are necessary to resolve ambiguities and conflicts in the medical record. It is the job of the ALJ, not the court, to weigh the medical evidence. 20 C.F.R.§ 404.157(d). The ALJ must evaluate the medical opinions he failed to mention in his decision. On remand, the ALJ is directed to (1) properly weigh the opinions of Dr. Gerber, Dr. Swanson, Dr. Melson, Dr. Matthews, Dr. Ransmeier, Dr. Mebane, Nurse Practitioner Miller, and Nurse Practitioner Bartlett; (2) reevaluate how to weigh plaintiff's subjective symptom testimony; (3) properly weigh plaintiff's VA disability rating; (4) redetermine plaintiff's RFC; and (5) reevaluate whether plaintiff is capable of performing a significant number of jobs in the national economy.

## CONCLUSION

The Administrative Law Judge's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

Dated this __1__ day of August 2016.

                                                Ann Aiken
                                   United States District Judge